Filed 2/25/14  In re Jonathan F. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JONATHAN F., a Person Coming Under the Juvenile Court Law. | B248659 |
| | (Los Angeles County Super. Ct. No. CK90647) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| NATALIE A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Juvenile Court Referee.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

John Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel for Plaintiff and Respondent.

_____

Natalie A. appeals from the juvenile court's order continuing her son Jonathan F.'s out-of-home placement at the six-month status review hearing and denying her petition under Welfare and Institutions Code[1] section 388 for a change in his placement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

When he was five months old, Jonathan F. suffered an acute right subdural hematoma, a subarachnoid hemorrhage, bilateral brain ischemia, and retinal hemorrhages in his left eye. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].) The consulting physician on Jonathan F.'s case concluded that he had suffered a serious, significant intracranial injury most consistent with an acceleration-deceleration type of action. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].) No constellation of medical conditions or accidental injuries would have resulted in a child presenting as Jonathan F. did. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].) The neurosurgeon who supervised the surgery on Jonathan F. testified that Jonathan F.'s acute subdural hematoma was caused by recent trauma, and he also saw evidence of a previous subdural hematoma during surgery. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].) Natalie A. maintained that Jonathan F. was fine, that there was nothing wrong with him, and that nothing had happened to him. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].)

The juvenile court found Jonathan F. to be a dependent child of the court under section 300, subdivisions (a) and (e), and entered a removal order under section 361, subdivision (c). (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].) We affirmed the dispositional orders and the jurisdictional findings. (*In re Jonathan F.* (July 22, 2013, B242144) [nonpub. opn.].)

On November 16, 2012, Natalie A. filed a section 388 petition seeking return of Jonathan F. to her custody. She claimed that she had "made significant progress in

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

completing the court[-]ordered case plan. The therapist has written a positive report . . . and many friends and family are available to help support the transition and insure the safety of Jonathan" F. Natalie A. argued that placing Jonathan F. in her custody would be in his best interest because she had been "very diligent in her visitation and as a result the child is very bonded to the mother and the child would only benefit from being placed full time in her care and custody."

The court conducted an evidentiary hearing on Natalie A.'s petition simultaneously with the six-month review hearing under section 366.21, subdivision (e). Both of Jonathan F.'s parents, the parents' therapist, and the social worker assigned by the Department of Children and Family Services (DCFS) to Jonathan F.'s case testified. The juvenile court denied the section 388 petition on the grounds that there was no true change in circumstances and that Jonathan F.'s best interests would not be promoted by the requested change in custody. The court also found that although the parents were in compliance with the court-ordered case plan they had not made substantial progress in addressing the issues that led to the dependency, and that Jonathan F. would be at substantial risk of detriment if returned to his parents' custody. Natalie A. appeals.[2]

## DISCUSSION

### I. Determination of Detriment

At the six-month review hearing for a child removed from parental custody, the court must return the child to the parent or parents unless it finds, by a preponderance of the evidence, that returning the child would create a substantial risk of detriment. (§ 366.21, subd. (e).) We review the court's determination for substantial evidence. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 703.) On substantial evidence review, all conflicts in the evidence are resolved in favor of the juvenile court's

---

[2]     Natalie A. has requested that this court take judicial notice of the juvenile court's May 22, 2013, and July 8, 2013, minute orders. We grant her request for judicial notice, and on our own motion we take judicial notice of all other minute orders since the hearing that is the subject of the present appeal.

3

finding, and all reasonable inferences must be made in support of the finding. (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1004-1005.)

Here, substantial evidence supports the juvenile court's finding that returning Jonathan F. to Natalie A.'s custody would create a substantial risk of detriment. The evidence presented at the review hearing demonstrated that Natalie A., while compliant with many of the elements of the court-ordered case plan, had not addressed the core issue leading to juvenile court jurisdiction: that Jonathan F. had been seriously injured by the nonaccidental infliction of head trauma. Instead, she denied that Jonathan F. had been injured at all. Natalie A. wrote that Jonathan F. "got sick," and testified that she believed Jonathan F. was born with an illness that caused his injuries, although she did not know what kind of illness it was. She told one person that Jonathan F. had a congenital heart condition, and advised the social worker assigned to the matter that an underlying medical condition caused his brain injuries. The social worker testified, "[W]hen I ask her, you know, all the information says it points to somebody hurting this child, she denies it. And she says that we're blaming her for something that she did not do, and we're making her complete programs."

The therapist who was counseling Jonathan F.'s parents told the court that no progress had been made concerning the reason for Jonathan F.'s injuries. All that he could do was to "just move forward with counseling. To get to know them, to learn about their upbringing, their goals and values and their plans for the future," and he confirmed that this was what they were doing in therapy.

Because Natalie A. continued to deny that Jonathan F. had suffered any injuries at all, DCFS remained concerned about Jonathan F.'s safety in her care. The social worker assigned to the case believed that "[e]ven though Mother has completed a parenting program and she's attending her individual counseling, she's just going through the motion[s]. She continues to deny the petition. She continues to deny that her child sustained injuries. She says that the court sees certain things but that, in her viewpoint,

4

it's a medical condition." The social worker believed Natalie A. was not making progress in her individual counseling.

The juvenile court observed, "I don't know how they're going to be able to pick up cues with respect to this child, how they're going to be able to react appropriately when they still haven't reacted appropriately to how the child was injured." Making clear that it did not require the parents to confess to injuring Jonathan F.—"Nobody's asking them to . . . jump up and say, 'I did it,'"—the juvenile court stated that "unless and until they accept why and how, the mechanism of this child['s injuries] . . . , they haven't made substantial progress." The evidence and law support this conclusion. The "mere completion of the technical requirements of the reunification plan" is not sufficient; a juvenile court "must also consider the progress the parent has made toward eliminating the conditions leading to the child[]'s placement out of home." (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142 [concerning parallel standard for return to parental custody in section 366.22, subd. (a)]. Natalie A.'s failure to progress in her understanding and acceptance that Jonathan had suffered nonaccidental trauma tended to demonstrate that she had not made substantive progress toward eliminating the conditions leading to Jonathan F.'s removal. Based on all the evidence, the court could reasonably conclude that Natalie A.'s progress was insufficient, and its conclusion by a preponderance of the evidence that return of Jonathan F. to her custody would create a substantial risk of detriment to him was supported by substantial evidence.

Natalie A. argues that her belief as to the cause of Jonathan F.'s injuries is not important and does not demonstrate that a risk exists to Jonathan F. Her counsel asks what is to be gained by insisting that Natalie A. accept that Jonathan F. was injured rather than sick. In a stunning minimization of the profound and life-threatening injuries inflicted on this child as a baby, counsel writes that Jonathan F. was "shaken not beaten," and "not shaken hard enough to cause traumatic injury such as fractures, bruising or neck injuries." Since now the parents have been "educated" not to shake the child, counsel asks whether it matters that Natalie A. does not believe that Jonathan F. was injured by

5

being shaken: "Even if she is wrong, what is the present risk to Jonathan?" The present risk to Jonathan F. from Natalie A. is that his mother cannot protect him from, or modify her behavior to prevent, further shaking injuries if she maintains that shaking is not the problem and that nothing done to Jonathan F. caused him any harm. Being "educated" on the concept that shaking a child is harmful is simply not enough to dispel the risk of further abuse when the parent who seeks custody denies that a shaken child was injured by shaking and maintains, contrary to the evidence, that his injuries were actually the result of illness and not any human conduct.

## II.     Section 388 Petition

Natalie A. contends that the juvenile court abused its discretion in denying her section 388 petition. Section 388 is a general provision permitting the court, "upon grounds of change of circumstance or new evidence . . . to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a).) The statute permits the modification of a prior order only when the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist; and (2) the proposed change would promote the best interests of the child. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) We review the court's ruling for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

The court denied Natalie A.'s petition on the ground that she had demonstrated neither a change of circumstances nor that the requested change was in Jonathan F.'s best interest. The juvenile court did not abuse its discretion. Natalie A. did not present new evidence or evidence of a change of circumstances. In her petition she asserted as a change in circumstance that she had "made significant progress in completing the court[-]ordered case plan. The therapist has written a positive report . . . and many friends and family are available to help support the transition and insure the safety of Jonathan" F. The court, however, concluded that Natalie A. was not making substantial progress for the reasons that were discussed in Section I. above; the therapist, while positive about

6

Natalie A., acknowledged that no progress was being made in therapy with respect to Jonathan F.'s injuries; and it is not clear that these friends and family members who were supposed to ensure Jonathan F.'s safety were aware of what he needed to be kept safe from, as at least one of them was advised that Jonathan F. suffered from a congenital heart condition rather than that he was subjected to nonaccidental trauma. As far as Jonathan F.'s best interest, Natalie A. argued that placing Jonathan F. in her custody would be in his best interest because she had been "very diligent in her visitation and as a result the child is very bonded to the mother and the child would only benefit from being placed full time in her care and custody." Even if we assume for the purposes of this discussion that Natalie A. was diligent about visitation and that the two were bonded, that does not mean that being placed in her custody was in his best interest. As discussed in Section I., substantial evidence supported the juvenile court's finding that being returned to Natalie A.'s custody would create a substantial risk of detriment to Jonathan F. This finding, and the evidence that supports it, together effectively preclude any conclusion that placing Jonathan F. with Natalie A. was in his best interest. We cannot say that the juvenile court abused its discretion when it concluded that Natalie A. had not demonstrated a change in circumstances or that her requested change in orders was in Jonathan F.'s best interest.

Natalie A. argues on appeal that there was no evidence that her refusal to accept the mechanism of Jonathan F.'s injuries created a risk of harm to Jonathan F. Natalie A. appears to misunderstand the court's reasoning. The court did not rule that Natalie A.'s denial that Jonathan F. was subjected to nonaccidental infliction of trauma was itself a risk to him, but that Natalie A. was not making substantive progress toward eliminating the risk of further physical abuse to Jonathan F. while she refused to accept that any injury had been inflicted upon him.

Natalie A. contends that the factors set forth in *In re Kimberly F*. (1997) 56 Cal.App.4th 519 support granting her section 388 petition. In *In re Kimberly F*., the court presented a non-exhaustive list of three factors for use in evaluating section 388 petitions:

7

"(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Id*. at p. 532.) Natalie A. argues that while the problem that led to dependency was very serious, she and Jonathan F. were very bonded, and "there was no evidence of any likelihood of reoccurrence" of the problem that led to jurisdiction. Natalie A.'s premise that Jonathan F. was at no risk of further harm is not borne out by the evidence, which instead supports a conclusion that Jonathan F. could not be returned to his mother without substantial risk of detriment. Neither *In re Kimberly F*. nor *In re Stephanie M*., *supra,*7 Cal.4th at pp. 316-326, which involved issues of a relative placement preference, the suitability of a grandparent's home, and issues regarding placement of a child with special needs with a relative she barely knew, support an alternative outcome on the facts presented here. The juvenile court did not abuse its discretion in denying Natalie A.'s section 388 petition.

## DISPOSITION

The order is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


WOODS, J.

8